### FRED J. KIESEL & CO. v. SUN INS. OFFICE OF LONDON.

(Circuit Court of Appeals, Eighth Circuit. June 20, 1898.)

#### No. 1,027.

1. FIRE INSURANCE—CONSTRUCTION OF POLICY.
    A policy on goods in a warehouse contained a clause which declared that "if a building or any part thereof fall, except as the result of fire, all insurance by this policy on such building or its contents shall immediately cease." The building fell, and the goods were destroyed by fire; but whether the fall was caused by the fire, or by a gale of wind, was the matter in issue. Plaintiff requested a charge that, if the building or goods were on fire before the building fell, the company was liable, even though it would not have fallen but for the wind. *Held,* that the court properly rejected this request, and correctly charged that, if the fall was caused by the fire, the company was liable, but, if it resulted from some other cause, it was not.

2. SAME.
    While a policy which is ambiguous or of doubtful meaning should be construed most strongly against the insurer, yet, if its terms are clear and unambiguous, they are to be taken in their plain, ordinary sense, and no construction is necessary.

3. APPEAL AND ERROR—QUESTION NOT RAISED BELOW.
    A question which was not called to the attention of the court below by any objection or request for instructions will not be considered on appeal or writ of error.

4. OPINION EVIDENCE—WHEN ADMISSIBLE.
    There is a recognized exception to the general rule requiring a witness to state facts, and not conclusions, which permits him to state his inference or opinion from facts he sees or knows, when he draws it from so many minor details that it is impossible to state them so that a jury could deduce a just inference from his narrative. But on an issue as to whether a building containing insured goods fell as the result of fire, or was blown down by a high wind, *held,* that the court committed no error in refusing to permit witnesses, who testified that they saw the roof

on fire, and had seen other buildings on fire before, to give their opinions as to whether it was still standing when they saw it burning.

**5. SAME.**

The general rule that witnesses should state facts, and not conclusions, should be strictly followed; and, whenever it is doubtful whether a case falls under the rule or one of its exceptions, the wise course is to place it under the rule.

In Error to the Circuit Court of the United States for the District of Utah.

A. R. Heywood (Hugh A. Tait, on the brief), for plaintiff in error.

T. C. Van Ness, for defendant in error.

Before SANBORN and THAYER, Circuit Judges, and SHIRAS, District Judge.

SANBORN, Circuit Judge. This writ of error challenges a judgment for the defendant in error, the Sun Insurance Office of London, an insurance corporation, in an action brought against it by the plaintiff in error, Fred J. Kiesel & Co., a corporation, on a policy of fire insurance upon merchandise that was situated in a warehouse at Ogden, in the state of Utah. One of the clauses of this policy reads: "If a building, or any part thereof, fall, except as the result of fire, all insurance by this policy on such building or its contents shall immediately cease." The complaint of the plaintiff contained the usual allegations of the issue of the policy, the destruction by fire of the merchandise insured, the proof of the loss, and a demand for its payment. In its answer the defendant denied that the goods were destroyed by fire, and that proper proof of loss was made, and then averred that the building in which the merchandise was contained fell, not as a result of fire, but as a result of wind, before either the building or the goods within it were destroyed or injured by fire. When the case came to trial, the defendant stipulated that, if it was liable at all, it was liable for the full amount of the policy, and that the proof of loss was sufficient in that event, but "did not admit that it was liable, but, upon the contrary, alleged and claimed and stood upon the proposition that in truth the building was blown down by a gale of wind on the night of the 18th of September, and that, after the building had been blown down, a fire started in the débris, and destroyed to some extent, the contents; that the only real issue to be tried was whether or not the loss occurred from fire,—that is, whether the building first caught fire, which resulted in the destruction of the building and its contents, or whether it fell before the fire began." This issue was tried by a jury for five days. Evidence was introduced, on the one hand, tending to show that the warehouse was on fire, and that the flames were breaking through its roof while every part of it was still standing; and, on the other hand, that material portions and substantially all of the warehouse had fallen from a cause other than fire, and unconnected with fire, to wit, from a gale of wind, prior to the occurrence of fire on the goods insured or on the building. The principal complaint in the case is: That at the close of the trial the court below refused to give to the jury the following instruction, which

was requested by counsel for the plaintiff: "If you believe from the evidence that the fire had originated, and that the building or any portion of the insured goods therein contained was on fire and burning, before the building or any part thereof fell, your verdict should be for the plaintiff, notwithstanding you may find from the evidence that subsequently the building or some substantial part thereof fell, and that the same would not have fallen but for the wind which was blowing at the time." That it charged them on this subject in these words: "If this building, or any substantial part thereof, fell before the fire, or before any portion of the merchandise insured (and this policy is on the merchandise within the building, and not on the building itself), before any portion of that merchandise was injured by fire, and it so fell, not as the result of the fire, but as the result of something else, your verdict should be for the defendant in this case, and not for the plaintiff." And that when counsel for the insurance company, at the close of the charge, excepted to this portion of it, and said, "As I understand the charge of the court, no matter to what extent the building was burning, if the goods were not on fire, no liability would attach," the court turned to the jury, and further charged them in this way: "Perhaps, gentlemen, I did not explain fully what I meant on that subject. If that building fell, even after the fire had originated, but fell from a cause distinct from the fire,—in other words, if the fall was not caused by the fire,—and if at the time it fell the goods had not caught fire, and had not been damaged by fire, the defendant would not be liable in this case. If, on the other hand, the goods—and the goods and merchandise only were insured—in the building, if those goods had been damaged by fire or had caught fire prior to the falling of the building, you will find for the plaintiff."

It is plain from the request of the plaintiff's counsel, which we have quoted, and from the instructions given by the court, that the only question of law at issue between court and counsel was whether or not the defendant was liable under its policy in case the building, or a substantial part thereof, fell from some other cause than fire after fire had attacked it, and before any of the goods insured were burned. No words occur to us more apt, terse, and expressive than those contained in the policy with which to answer this question: "If a building or any part thereof fall, except as the result of fire, all insurance by this policy on such building or its contents shall immediately cease." If the building falls before the goods insured are damaged by fire, and if the fall is not caused by fire, from that instant the insurance ceases. The purpose of parties to an insurance policy in making their contract is to indemnify the insured against all destruction or damage caused by fire, but to give no indemnity against any destruction which resulted from other causes. Naturally, the dominant thought throughout the entire agreement, and hence the key to its interpretation and the measure of the liability of the company under it, is the cause of the destruction or damage. Generally speaking, if that cause is fire, there is liability. If fire is not the cause, there is no liability. In the particular clause in issue in this case, the same purpose controls, the same key interprets, the

same test determines the liability. If the fall of the building was caused by fire, then the defendant was liable, whether the goods insured were burned before or after the fall; but if the fall occurred before the fire attacked the goods, and if that fall was caused by an earthquake, by a waterspout, by a cyclone, or by any other cause than fire, the express ,agreement was that, when the fall occurred, the insurance ceased, and there was no liability. If the building was on fire, and if it would not have fallen without the fire, its fall might well be said to have been the result of the fire; but if it was on fire, and if it would have fallen by the force of the wind if there had been no fire, then its fall could not be said to have been the result of the fire, and the defendant was not liable. Herein was the fatal defect in the instruction asked by plaintiff's counsel. They failed to appreciate the fact that the cause of the fall was the test of the liability. They requested the court to charge the jury that if the building was on fire, and would not have fallen but for the wind, the defendant was liable, when, by the express terms of the contract, it was not liable unless the warehouse fell as the result of the fire; and inasmuch as it might have been on fire, and yet might have fallen from the wind if there had been no fire, this instruction was erroneous. If they had asked a charge that the defendant was liable if the building would not have fallen but for the fire, that instruction would have been in accord with the terms of the contract, and would undoubtedly have been given. But when they asked that the defendant be held although the fall resulted from the wind, regardless of the question whether it resulted either directly or indirectly from the fire, they attempted to evade and escape from the plain reading of the agreement. The court below perceived this mistake, and correctly charged that, if the fall was caused by the fire, the insurance company was liable, but that if it resulted from some other cause it was not.

In reaching this conclusion, we have not overlooked the customary appeal of counsel in insurance cases to the rule that, where the terms of a policy are ambiguous or of doubtful meaning, its words should be construed most strongly against the company. Guarantee Co. v. Mechanics' Savings Bank & Trust Co., 47 U. S. App. 91, 101, 26 C. C. A. 146, 152, and 80 Fed. 766, 772. But it is equally well settled that "contracts of insurance, like other contracts, are to be construed according to the sense and meaning of the terms which the parties have used; and, if they are clear and unambiguous, their terms are to be taken in their plain, ordinary, and proper sense." Imperial Fire Ins. Co. v. Coos Co., 151 U. S. 452, 463, 14 Sup. Ct. 379, 381. We are unable to discover anything ambiguous, doubtful, or obscure in the language of the clause over which this controversy rages. It was competent for these parties to fix the terms of their agreement. It is admitted that the contract was one for indemnity against loss caused by fire, and not against loss from other causes. It was for indemnity against such loss while the goods remained in the same state of hazard in which they were when the contract was made; and the policy contained various provisions limiting its duration and effect if a change in the situation of the goods took place which might enhance the

danger of loss by fire, such as that the policy should be void if the insured obtained other insurance without notice to the company, or if the goods became incumbered by a chattel mortgage, or if the policy was assigned before loss, or if dynamite or certain other explosives exceeding in quantity 25 pounds were kept on the premises, or if a loss was caused by riot, theft, or by the neglect of the insured after a fire, or if the building containing the goods fell except as the result of fire.    There was nothing unjust, unreasonable, or unfair in any of these stipulations.    In making them, the parties merely exercised their rights of contract.    They simply guarded more carefully and expressed more clearly their fixed intent to make a contract to indemnify the insured against loss caused by fire, and by fire only. Both parties well understood that this fire insurance company did not undertake to indemnify the plaintiff against loss caused by tornadoes, cyclones, waterspouts, earthquakes, or winds.    Observation had taught, and experience had proved, that the débris of a fallen building is far more likely than the standing building to take fire and burn; and the clause here in issue, which exempts the company from liability from the contents of such a building from the instant of its fall, when that fall is not caused by fire, is consistent with the main purpose of the contract, is rational and fair in itself, and is expressed in words so apt, terse, and plain that attempts to elucidate their meaning are vain.    Where the terms of a contract are so clear that exposition serves only to obscure, interpretation is futile and rules of construction have no application.

Several objections to this charge have been presented, which do not challenge the soundness of the main proposition of law which we have been considering, and they will now be briefly noticed.

It is claimed that the charge was erroneous because the defendant did not claim in its answer that it was free from liability if the building caught fire before it fell, and because at the opening of the trial it admitted "that the only real issue to be tried was whether or not the loss occurred from fire,—that is, whether the building first caught fire, which resulted in the destruction of the building and its contents, or whether it fell before the fire began."    No objection of this kind, however, was made, and no exception to the charge on this ground was taken.    No request was preferred to instruct the jury that the defendant, by its answer and stipulation, had admitted that it was liable if the building caught fire before it fell, and that question was never presented to the court below.    It is therefore not here for our consideration.    This is a court for the correction of the errors of the trial court only.    Insurance Co. v. Miller, 19 U. S. App. 588–592, 8 C. C. A. 612, 614, and 60 Fed. 254, 257; City of Lincoln v. Sun Vapor Street-Light Co., 19 U. S. App. 431, 439, 8 C. C. A. 253, 258, and 59 Fed. 756, 761.    Since this question was not presented to that court, and that court never considered or decided it, it certainly never committed any error regarding it, and there is nothing in this objection for us to consider or correct.    Moreover, the stipulation at the opening of the trial was not made for the purpose of presenting an accurate statement of the single issue for trial, but for the mere purpose of naming that issue and separating it from others raised by the plead-

ings. The policy was introduced in evidence at the trial, and on its face it raised the question which the court considered. The case was tried five days, and at the close of that trial the court gave the law relative to this issue, and submitted it to the jury without any suggestion or warning from any one that it had been eliminated from the case either by answer or admission. Under these circumstances, the issue was not eliminated. It was pending, and a refusal to consider and submit it would have been erroneous.

It is said that the last sentence of the supplementary charge, which was, "If, on the other hand, the goods,—and the goods and merchandise only were insured in the building,—if those goods had been damaged by fire, or had caught fire prior to the falling of the building, you will find for the plaintiff," was, in effect, a charge that the jury could not find for the plaintiff unless the goods took fire before the building fell, and that this was an erroneous statement of the law. But no exception was taken to this sentence of the charge, and no request was made for its modification or extension; so that this question is not before us, and, if it was, it is plain, when the entire charge is considered, that there is no just ground for this criticism. No jury of ordinary intelligence could have listened to the instructions of the court in this case without perceiving that the question for them to determine was not whether or not the goods were burning before the building fell, but was whether the fall of the building was the result of fire or of some other cause.

It is assigned as error that witnesses who had testified that they saw the roof of the building on fire, and that they had seen other buildings on fire before, were not permitted to testify whether or not in their opinion the roof was standing when they saw it burning. It is conceded that this was not a proper subject for expert testimony, and that the general rule of evidence is that a witness must state the facts, and may not testify to his opinions. But it is claimed that the proposed testimony falls under the recognized exception to this rule that any witness may state his conclusion, inference, or opinion from facts he sees or knows when he draws it from so many minor details that it is impossible for him to state them so that the jury would have a fair opportunity to deduce a just inference, or to form a correct opinion from the narration or description he could give. Railroad Co. v. Rambo, 16 U. S. App. 277, 280, 281, 8 C. C. A. 6, 8, and 59 Fed. 75, 77; Yahn v. City of Ottumwa (Iowa) 15 N. W. 257. It is not difficult to state this exception, or to illustrate it with striking examples; but it is not always easy to correctly apply it in doubtful cases. Many instances readily occur to the mind which, from their very nature, fall clearly within the exception. A witness may give his opinion as to the identity of a person, as to his physical or mental condition, may testify that he was sick or intoxicated, or that he was pleased or angry or insane, because it is clearly impossible for him to describe to the jury the many, sometimes slight, yet sure, manifestations of the identity or state which he saw, so that they can have any fair opportunity to draw from them a correct conclusion. In cases of this kind a refusal to allow a witness to state his opinion would constitute a palpable error. But there are many cases so near the

line between the rule and its exception that an appellate court should not be swift to reverse the rulings of the court below unless it is reasonably clear that a plain error of law has been committed. There is a wide difference in the ability of witnesses to describe what they have seen, and to narrate what they have heard. One witness may be able to make so graphic a word picture of a scene he has witnessed that those who hear it are in as good a situation to deduce a correct conclusion as he is; while another, who has observed the same incidents, may be utterly incapable of describing them, and can do nothing but state the impression or conclusion he drew from them. The trial court sees and hears each witness, and in doubtful cases is far better qualified than the court of appeals to determine whether a witness should be confined to the facts, or should be allowed to state his conclusions. In the case in hand, it does not appear to have been impossible—indeed, it does not seem to have been very difficult—for the witnesses to have so described the appearance of the burning roof that the jury could have drawn a correct conclusion from their description with reference to the question whether or not it was standing when they saw it burning. One of these witnesses testified that he saw the upper portion of the east wall from one end to the other standing; that he saw one-third of the easterly slope of the roof in place; and that the north two-thirds of this easterly slope was covered with fire and flames, so that he could not see the material of which it was composed. This witness could certainly have stated, as the facts were, either that the base of these flames was on the plane of the roof, or that on a portion of the roof their base was on this plane, and on another portion it was below it, and that the flames came through it as from the mouth of a crater; and from such a description the jury could easily have drawn the proper conclusion. The general rule that facts, and not conclusions, should be stated, is a wise and salutary one, and cannot be too strictly followed. It tends to prevent fraud and perjury, and is one of the strongest safeguards of personal liberty and private rights. Whenever it is doubtful whether a case falls under the rule, or under one of its exceptions, the wise course is to place it under the rule; and, in our opinion, the court below made no mistake in following this course in the case before us. The judgment below is affirmed.