## WASHINGTON & BERKELEY BRIDGE CO. v. PENNSYLVANIA STEEL CO.*

### (Circuit Court of Appeals, Fourth Circuit.   April 2, 1918.)

### No. 1583.

1. APPEAL AND ERROR ⊜1195(4)—FINDINGS BY APPELLATE COURT—EVIDENCE—WEIGHT OF FINDING ON NEW TRIAL.

   Where Circuit Court of Appeals reversed judgment on writ of error, its finding on the evidence before it can have no weight on the new trial, unless the evidence is practically the same as that on which the court based its finding.

2. INDEMNITY ⊜15(9)—NEGLIGENCE—JURY QUESTION—CONDITION OF PIER.

   In steel work subcontractor's action against bridge contractor to recover over upon a judgment recovered against it by an employé injured in the fall of a pier, whether subcontractor's foreman put the span on a green and unsafe pier, relying on negligent assurance of contractor's engineer that it was safe, or was himself negligent in placing span on an apparently green and unsafe pier, held, under evidence, for jury.

3. INDEMNITY ⊜14—JUDGMENTS—CONCLUSIVENESS—PROXIMATE CAUSE.

   Where employé recovers judgment against steel work bridge subcontractor for injuries sustained in fall of pier, the judgment is conclusive, in subsequent action by subcontractor to recover over against contractor, that green condition of pier was a proximate cause of the injury, but is not conclusive as to whether it was sole proximate cause.

4. INDEMNITY ⊜15(3)—SUBCONTRACTOR'S ACTION AGAINST CONTRACTOR—CONDITION OF PIER—CONTRIBUTORY NEGLIGENCE—INSTRUCTION.

   In steel work subcontractor's indemnity action against bridge contractor for negligence in authorizing work on green and unsafe pier, court should have instructed that, even if contractor was responsible for use of green piers, subcontractor could not recover, if preponderance of evidence showed that it negligently allowed span or battering ram to strike pier, or used defective traveler, and that but for all or one of such acts pier would not have fallen.

5. EVIDENCE ⊜527—EXPERT—ENGINEERS.

   In steel work subcontractor's action against bridge contractor for negligence in authorizing work on unsafe pier, evidence of contractor's engineer as to defects in subcontractor's machinery tending to cause accident, and his opinion as to cause of falling of pier after an examination, held competent on question of subcontractor's contributory negligence.

6. EVIDENCE ⊜527—EXPERT TESTIMONY—ENGINEERS.

   In steel work subcontractor's action against bridge contractor for negligence in authorizing work on unsafe pier, testimony of engineers as to effect of the span being allowed to strike pier held competent on question of subcontractor's contributory negligence.

---

⊜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

*Rehearing denied July 3, 1918.

In Error to the District Court of the United States for the Northern District of West Virginia, at Martinsburg; Alston G. Dayton, Judge.

Action by the Pennsylvania Steel Company against the Washington & Berkeley Bridge Company. Judgment for plaintiff, and defendant brings error. Reversed.

Charles D. Wagaman, of Hagerstown (Wagaman & Wagaman, of Hagerstown, Md., and Brown & 'Brown, of Charles Town, W. Va., on the brief), for plaintiff in error.

Stuart W. Walker, of Martinsburg, W. Va., and Henry H. Keedy, Jr., of Hagerstown, Md. (Charles J. Faulkner, of Martinsburg, W. Va., on the brief), for defendant in error.

Before PRITCHARD, KNAPP, and WOODS, Circuit Judges.

WOODS, Circuit Judge. Judgments of the District Court in favor of plaintiff have been twice reversed. 215 Fed. 32, 131 C. C. A. 340; 226 Fed. 169, 141 C. C. A. 167. Regrettable as it is, the judgment recovered by the plaintiff on the third trial must also be reversed for the failure of the District Court to observe the rules of law laid down by this court in its former opinions. An effort will be made to make clear our conclusions on the legal questions involved, without detailed reference to the numerous exceptions and assignments of error.

The bridge company, having undertaken to construct a bridge across the Potomac river near Williamsport, Md., contracted with the steel company to furnish and put in position the steel girder spans. Under a contract similar in terms, Elmore & Hamilton Contracting Company undertook to furnish the material and construct the concrete piers and abutments. Mason D. Pratt, as engineer, agreed with the bridge company to supervise, inspect, and take charge of the construction of the bridge as its representative. On 16th of December, 1908, pier No. 10 fell while the workmen of the steel company were placing on the steel superstructure, killing some of its men and injuring others. Frank L. Benning, one of the workmen who was seriously injured, sued the steel company in the circuit court for Washington county, Md., claiming damages for his injuries, on the allegation of negligence that the steel company knew, or by the exercise of reasonable care could have known, that the pier was "green, weak, defective, and of insufficient strength to carry the weight for which it was intended." The steel company gave the bridge company written notice of the pendency of the suit and of its intention to hold the bridge company responsible for any recovery in favor of Benning. Benning recovered judgment for $13,500 against the steel company.

After paying the judgment the steel company brought this action, alleging that it was the duty of the bridge company to see that the piers were safe for the placing of the steel superstructure, that the work was done under the direction of its engineer, that the defendant knows, or by the exercise of reasonable care and caution could have known, that the pier was green, defective, and of insufficient strength to carry the weight, and that nevertheless the defendant authorized and directed the employés of the steel company to proceed with the work of placing the steel superstructure on pier 10. On this allegation

of negligence the plaintiff asked for judgment against the defendant for the amount of the judgment in favor of Benning, together with interest and costs.

By the former judgments of this court these points were settled: First. The judgment of Benning against the steel company was conclusive against the bridge company as to matters necessary to Benning's recovery, namely: (a) The negligence of the steel company as a proximate cause of the injury in failing to furnish Benning a reasonably safe place to work; (b) the absence of contributory negligence on the part of Benning and of any act of a stranger as an intervening cause of the injury; (c) the correctness of the verdict is an estimate of the damages suffered by Benning. Second. The judgment in favor of Benning was not conclusive as to matters not necessary to Benning's recovery. Third. Since the steel company could not escape liability to Benning for failure to perform its nondelegable duty of furnishing him a reasonably safe place to work, by showing that it had relied on the bridge company to furnish a safe pier, it follows that the judgment in favor of Benning against the steel company did not settle the issue of negligence between the steel company and the bridge company. Fourth. The bridge company was bound by its contract to use due care to furnish the steel company with a pier strong enough to bear the steel superstructure; and, since the engineer was the agent of the bridge company, it was bound by his representations to the steel company as to the safety of the pier as fully as if they had been made by the company itself.

The questions open at the second trial between the steel company and the bridge company under the evidence then offered were: Did the bridge company, through its engineer, negligently represent to the steel company that the pier was safe, so as to fix upon itself negligence as the proximate cause of the accident? Was the steel company guilty of contributory negligence, either in disregarding the warning afforded by the appearance of the pier itself or the opinion of the assistant engineer that it would not be safe, or in using a battering ram to force the girder to its proper place on a cement pier not fully dry? The judgment in Benning's case established the negligent use of a green and unsafe pier as a proximate cause of his injury, but it did not determine whether the plaintiff or the defendant in this action was responsible for the negligent use.

[1] In the opinion rendered on the second reversal, it was held that the evidence offered clearly showed that the steel company placed the span on the green and unsafe pier, relying on a negligent assurance of Pratt, the engineer, that it was safe. But that finding by this court under the evidence then before it was not intended to have, and could not have, any weight on the new trial, unless the evidence on the subject was practically the same. "The reversal operated to set aside the verdict and put the issues at large as they were before." Slocum v. N. Y. Life Ins. Co., 228 U. S. 364, 399, 33 Sup. Ct. 523, 57 L. Ed. 879, Ann. Cas. 1914D, 1029. On the new trial, therefore, it was competent for the defendant to introduce the evidence of Pratt, and any other new evidence to the effect that Pratt did not tell the plaintiff's agent that the pier was safe.

[2] Under this evidence the defendant was entitled to an instruction submitting to the jury the question whether or not plaintiff's agent, Bickle, put the span on a green and unsafe pier, relying on a negligent assurance of Pratt that it was safe, or was himself negligent in placing the span on an apparently green and unsafe pier. Under the evidence the instruction should have been that if Pratt told Bickle to put the span on pier 10 when he reached it, and nothing else appeared, Bickle had a right to rely on the statement and proceed, and would not be chargeable with contributory negligence, but that, even if Pratt did give the assurance of safety, and afterwards Bickle should have known as a reasonable man, either from the suggestion of Darby, or from the appearance of the pier, or from any other fact brought to his attention, that the pier was unsafe, then he would be chargeable with contributory negligence, and the plaintiff could not recover. Instead of an instruction to this effect the District Judge charged the jury on this subject as follows:

"Therefore the responsibility of determining whether these piers were hardened and strong enough to bear the weight designed to be placed upon them must be held to have been with Pratt, the engineer, for whose error of judgment the bridge company was responsible, unless the condition of the pier at that time was so manifestly bad as clearly to inform any man of ordinary sense and judgment, unskilled in concrete work, that it would not sustain the weight, but would collapse. You are to determine from all the evidence whether such was the condition of the pier at the time, and whether Bickle, the steel company's foreman, with such knowledge, or chargeable with such knowledge, as a man of ordinary sense and judgment, unskilled in concrete work, recklessly went on and assumed the risk. It is only under such a condition that the bridge company can be relieved of the responsibility for Pratt's failure to be present and determine, in advance of allowing the work to go on, all questions as to safe and unsafe condition of the pier."

This meant that the plaintiff would not be guilty of contributory negligence unless its agent recklessly put the span on the pier, knowing it would fall; and it was in effect an instruction to find for the defendant, for there was no evidence from which the jury could find that Bickle was so reckless and conscienceless as to order men to go on the pier and place the span, knowing it would fall. The issue was negligence; not recklessness or wantonness. In the following language the jury were in effect again instructed to find against the defendant on the issue of contributory negligence:

"But, aside from this, I again charge you that we are bound here by the finding of the Maryland court that the approximate cause of the accident was the weakness and insufficiency of the pier. This being so, this evidence as to the ramming cannot be considered by you in this case, unless you find that it was of such violent character as to have shattered and caused the pier to collapse, if it had been sound and sufficient. The only testimony in the case was that of the expert, who stated that it would not have been so shattered, and caused the pier to collapse, if it had been sound and hardened."

[3] The judgment in Benning's case is conclusive that the green condition of the pier was a proximate cause of his injury, but not that it was the sole proximate cause. This court so decided in the last opinion, in holding that the issue of contributory negligence should have been submitted to the jury. Hence, as against the plaintiff, the way

was open for the defendant to show by the testimony that, even if it was negligent in turning over to the plaintiff for use a green and unsafe pier, yet the pier would have supported the span, but for the negligence of the plaintiff in putting additional strain upon it by use of a battering ram, or allowing the traveler or the span to strike the pier, or by any other means.

[4] Evidence was introduced, requiring the issue of contributory negligence to be submitted to the jury. Had a sound and sufficient pier fallen from the ramming, or from a blow of the span, or from a defect in the traveler, there would have been no negligence on the part of the defendant, and therefore no issue of contributory negligence. The instruction should have been that, even if the defendant was solely responsible for the use of a green and unsafe pier, yet if the preponderance of the evidence showed that the plaintiff negligently used a battering ram on it, or negligently allowed the span to strike it, or negligently used a defective traveler, and that the pier would not have fallen, but for all or any of such acts of negligence on the part of the plaintiff, then the plaintiff cannot recover.

[5, 6] The testimony of Pratt as to defects in the machinery used by the plaintiff tending to cause the accident, and his opinion as to the cause of the falling of the pier arrived at by him as an expert engineer by an examination of the pier, the span, and the traveler was competent on the issue of contributory negligence. So, also, on the same issue, was the testimony of other expert engineers as to the effect of the span being allowed to strike the pier.

It follows, from the views stated, that there were vital errors in the charge, and that the evidence referred to in the assignments of error numbered 2, 3, 4, 5, 6, 7, 8, and 9 was competent.

Reversed.